UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IGNACIO REYNOSO,

        Plaintiff,                    DECISION & ORDER
                                                  02-CV-6318 CJS
      v.

SELSKY et al,

        Defendants.

_____

**APPEARANCES**

| | |
|---|---|
| For plaintiff: | Ignacio Reynoso *pro se*<br>86-A-5178<br>Southport Correctional Facility<br>Box 2000<br>Pine City, NY 14871 |
| For defendants: | Tamara B. Christie, A.A.G.<br>New York State Office of the Attorney General<br>144 Exchange Boulevard<br>Suite 200<br>Rochester, NY 14614 |

**INTRODUCTION**

Before the Court is defendants' motion (# 42) for summary judgment, plaintiff's motion (# 50) for an extension of time to respond to defendants' motion, and plaintiff's cross-motion (# 51) for summary judgment. For the reasons stated below, plaintiff's motion for an extension of time is granted and his cross-motion and brief in response to defendants' motion for summary judgment is accepted as filed on July 20, 2006. In addition, defendants' motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

**BACKGROUND**

In its initial Decision and Order (# 5), the Court reviewed plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and dismissed his Equal Protection claims, dismissed his Eighth Amendment and due process claims pertaining to a three-day water deprivation order, dismissed his denial of parole release and time allowance claims, dismissed his conspiracy claim under 28 U.S.C. § 1985, and dismissed his due process claim concerning the January 11, 1999, Elmira Correctional Facility disciplinary hearing. The Court allowed plaintiff's due process claims pertaining to the February 25, 1999, and March 2001 disciplinary hearings[1] to proceed.

The Court has complied the factual background information from the parties' submissions. Defendants filed a separate statement of facts, to which plaintiff responded in his cross-motion. Accordingly, the facts below are undisputed, except where indicated.

Plaintiff was an inmate in the custody of the New York State Department of Correctional Services ("DOCS") and was incarcerated at the Southport Correctional Facility ("Southport"), where each of the defendants was employed. On February 18, 2001 and February 22, 2001, Lieutenant Murray conducted a disciplinary hearing involving plaintiff.[2]

---

[1] The Court also directed the Clerk to terminate a number of named defendants, including Southport Hearing Officer Lieutenant W. Murray.

[2] Defendants have attached the following to their motion papers: Exhibit A to the Murray Declaration purported to be true and accurate copies of the documents relating to the hearing; Exhibit B, purported to be a true and accurate copy of the tape recording of the hearing; Exhibit C, purported to be a copy of the transcript of the hearing tape recording; Exhibit D, purported to be a copy of plaintiff's appeal; Exhibit E, purported to be a copy of the administrative modification by Selsky, dated April 10, 2001; and Exhibit F, purported to be a copy of the court's decision regarding Reynoso's Article 78 Petition, along with the administrative reversal following the Court's decision. Defendants also note that throughout the transcript, areas of missing text, indicated by ". . . .", show that the response of the individual speaking was inaudible and unable to be transcribed from the audio tape.

At the hearing, plaintiff sought to call inmate Hernandez (# 96-A-1293), and Correctional Officers ("C.O.") Ashley, Dyers, Rodgers, Dininny and Matello, as witnesses. C.O. Rodgers testified at the hearing; however, the other witnesses requested by plaintiff did not testify. Lieutenant Murray completed the form indicating the reasons why he did not allow these other witnesses to be called. In particular, he wrote on the form that the witnesses did not observe the incident and therefore were not relevant. Plaintiff relates the following with regard to the February 2001 hearing:

> 4. On February 7, 2001, a tier III misbehavior report was issued to me. The disposition of guilt was on February 18, 2001, the main witness was denied to me. Upon appeal to Donald Selsky, on February 25, 2001, and on April 10, 2001, Donald Selsky modified.
>
> 5. On June 4, 2001 - Plaintiff submitted an Article 78 to the Chemung County Supreme Court, index No. 2001-1752—and on August 27, 2001, Hon. Judith F. Oshea J., reversed the decision of Donald Selsky, modification—and expungement of the records was ordered. And on September 10, 2001, Donald Selsky reversed his own decision of modification of 4/10/01.

(Reynoso Decl. ¶¶ 4 & 5.) Plaintiff also relates the following with regard to a subsequent hearing on another misbehavior report:

> 6. On March 18, 2001, a tier II misbehavior report was issued to plaintiff on March 23, 2001, Lt. Donahue, Hearing Officer held the hearing in my absence and being found guilty, and given 30 days keeplock. While plaintiff was in his cell, C.O. Held, brought in the disposition of guilty - then plaintiff told him that plaintiff wanted to attend the hearing and the officer told plaintiff that he already signed the waiver form. Then plaintiff replied that the form has his name printed on top but it was his neighbor's signature that appeared— and it were the neighbor's initaials [sic] which were L.F. and my initials are I.R, and officer answer[ed] "It is to[o] late". Inmate _____ [sic] Laboy Franklin had the same misbehavior report. See, Exhibit 2 of C.O. Held declaration.
>
> 7. On March 25, 2001 - plaintiff appealed - and on March 29, 2001, Captain W. Wilcox answered it and affirmed.
>
> 8. On June 4, 2001 - Plaintiff filed an article 78 at the Chemung County

>Courthouse and this court affirmed the decision O'Shea J., on September 12, 2001. An appeal was taken to the Appellate Division acknowledge received the appeal brief and on February 6, 2002. The Third Department gave a schedule plaintiff - memorandum ot [sic] br [sic] heard on March 22, 2002. On March 12, 2002, while plaintiff was at Upstate Correctional Facility, plaintiff received the following memo saying:
>
>>Date: March 12, 2002
>>To: Reynoso Ignacio, 86A5 178
>>From: T. Ricks, Superintendent
>>Subject: Recent Communication - Discretionary Review
>>"The Tier 2 Hearing Completed March 23, 2001, has had discretionary review. After review it is dismissed and expunged due to error in the hearing process."
>
>9. On March 24, 2001, C.O. (G.) Evans wrote a false misbehavior report of 118.33. Flooding - this report was dismissed, but an order for deprivation of water [sic]. See, Exhibit 21 of the claim and page 24. Also, authorized by Lt. (W.) Murray. The same Lt presided as hearing officer of paragraph 4 and 5 above.
>
>10. This Court dismissed *sua sponte* some defendants hearing officer of Parole Commissioner and Time allowance Committee.

(Reynoso Decl. ¶¶ 6-10.) According to defendants' statement of facts, the second disciplinary hearing involving plaintiff, which was conducted by Lieutenant Donahue conducted occurred on March 23, 2001. Defendants allege that plaintiff refused to attend the hearing and, therefore, waived his right to be present for it. More specifically, C.O. Held stated that on March 23, 2001, he informed plaintiff that he had a disciplinary hearing to attend. Plaintiff then asked C.O. Held what tier the hearing was. C.O. Held responded that it was a Tier II hearing, and plaintiff stated that he did not want to attend. C.O. Held then asked plaintiff to sign the waiver form, which he did. C.O. Held proceeded to inform plaintiff that the disciplinary hearing would be conducted outside of his presence. Subsequently, following the hearing, Lieutenant Donahue sentenced plaintiff to 30 days keeplock.

## STANDARDS OF LAW

In order to bring a claim under § 1983, a prisoner must establish the following:

> "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). Prison discipline implicates a liberty interest when it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

*Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). In the context of a prison disciplinary hearing, inmates possess due process rights under the Fourteenth Amendment, but "the full panoply of rights" due a defendant in a criminal proceeding does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992). An inmate has the right to advance written notice at least twenty-four hours prior to a disciplinary hearing, he has a right to be advised of the facts relied upon by prison officials in bringing charges, he has the right to call witnesses and to present documentary evidence, *Wolff*, 418 U.S. at 563-66, and he has the right to an assistant to aid him in the preparation of his defense. *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988).

An inmate is entitled to a fair and unbiased hearing officer. *McCann v. Coughlin*, 698 F.2d 112, 122 (2d Cir. 1983). The standard of impartiality enunciated in *Wolff* requires that a prison disciplinary hearing officer "not be so insufficiently impartial as to present a 'hazard of arbitrary decisionmaking.'" *Black v. Selsky*, 15 F. Supp. 2d 311, 317 (W.D.N.Y. 1998) (quoting *Wolff*, 418 U.S. at 571); *accord Snell v. Jackson*, No. 04-73883-DT, 2006 U.S. Dist. LEXIS 5373 (E.D. Mich. Jan. 25, 2006). To prove bias in an administrative adjudication, plaintiff "must overcome a presumption of honesty and integrity in those

serving as administrators." *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). As the district court observed in *Snell*,

> The burden of overcoming the presumption of impartiality can only be accomplished with "convincing evidence that a risk of actual bias or prejudgment is present." *Navistar Int'l Transp. Corp. v. E.P.A.*, 941 F. 2d 1339, 1360 (6th Cir. 1991). Any alleged bias or prejudice on the part of a decisionmaker "must be evident from the record and cannot be based on speculation or inference." *Id*. Bare assertions of bias and prejudgment will not support a prisoner's claim that he was denied an impartial prison disciplinary hearing.

*Snell*, 2006 U.S. Dist. LEXIS 5373, *11-*12 (E.D. Mich. Jan. 25, 2006) (citation omitted).

## ANALYSIS

Plaintiff contends that he was denied due process rights at two separate disciplinary hearings. As indicated above, the first hearing was held on February 18, 2001 and continued to completion on February 22, 2001, and the second hearing was held on March 23, 2001. First, as defendants point out in their memorandum of law, plaintiff has made claims against each defendant in both his individual and official capacity. As a result of Eleventh Amendment immunity, defendants are entitled to summary judgment on all plaintiff's official capacity claims. The Court will now address the remaining claims for which defendants and plaintiff seek summary judgment.

### *February 18, 2001, Hearing*[3]

In an inmate misbehavior report dated February 8, 2001, Nurse A. Peters alleged that although plaintiff had been informed of the need to dress appropriately for a female nurse who was doing rounds on the gallery where he was housed, he was wearing only

---

[3]The dates associated with this hearing include February 18, 22, and 25, 2001. The hearing began on February 18, was continued on February 22, and plaintiff filed an appeal from the disposition on February 25, 2001. All three dates have been variously used to describe the hearing at issue on the instant motion.

boxer shorts with his penis fully exposed. This was a violation of Rule 101.20, Inmates shall not intentionally expose their genitals. (Murray Decl. Ex. A., at 1.) On February 16, 2001, the Superintendent designated Lieutenant Murray to conduct a Tier III hearing. Lieutenant Murray held that hearing on February 18 and 22, 2001, and reported the results on February 22, 2001. The report of the hearing shows that only C.O. J. Rodgers testified, despite the fact that plaintiff had requested testimony from five other witnesses. (Murray Decl. Ex. A., at 9.) Lieutenant Murray noted that C.O. Ashley, C.O. Dyer, Nurse Matello and C.O. Dininny had not been present when the incident occurred and would not have relevant testimony to offer. (Murray Decl., Ex. A., 13-16.) The inmate witness requested by plaintiff refused to participate in the hearing. (Murray Decl., Ex. A., at 17.) Lieutenant Murray reported that he found Nurse Peters' report to be credible, and that plaintiff did not deny the charge, only offered excuses, which he changed during the course of the hearing. On one hand, plaintiff claimed that he did not hear the announcement that a female nurse was on the block because he did not have his hearing aid on. (Murray Decl., Ex. C., at 3.) On the other hand, he claimed that, since he was not on the sick call list that day, the nurse should not have stood in front of his cell. (Murray Decl., Ex. C., at 10.)

After Lieutenant Murray called the first witness, C.O. Rodgers, he learned that plaintiff only wanted to ask him questions about an alleged retaliation the day following his indecent exposure. Lieutenant Murray then informed plaintiff that the one inmate witness had refused to testify, and then Lieutenant Murray asked plaintiff whether any of the other witnesses would be offering evidence pertinent to the incident at issue. Plaintiff responded, "I, I just want to question [sic] about the retaliation why [sic] they gave me, why . . . shower on the date because of the incident on 2/7/01?" (Murray Decl., Ex. B, at 6.) Lieutenant

Murray then adjourned the hearing to permit plaintiff's last witness, Psychiatric Nurse Matello, to be called. (Murray Decl., Ex. C., at 8.) When the hearing continued on February 22, 2001, Lieutenant Murray informed plaintiff that he had determined that Nurse Matello would not have any relevant evidence to offer. (*Id.*) Lieutenant Murray found plaintiff guilty and sentenced him to six months in the special housing unit ("SHU").

Plaintiff appealed on February 25, 2001. (Murray Decl., Ex. D.) The Director of Special Housing reviewed plaintiff's appeal and, on April 10, 2001, modified the sentence to four months in SHU. (Murray Decl., Ex. E.) In a decision and order entered on August 27, 2001, New York State Supreme Court Justice O'Shea vacated the disciplinary proceeding because of the lack of evidence, but found that the plaintiff's inmate witness refused to testify. (Murray Decl., Ex. F.) On September 10, 2001, the Director of Special Housing reversed the initial February 22, 2001, determination. (Murray. Decl. Ex. F., at 49.[4])

The United States Supreme Court has recognized an inmate's right to call witnesses at prison disciplinary hearings. *Wolff v. McDonnell*, 418 U.S. 539 (1974). However, this right is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real*, 471 U.S. 491, 495 (1985). More specifically, the right to call witnesses is subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976). The Supreme Court also held in *Wolff* that a hearing officer may refuse to call a

---

[4] The administrative determination follows the Supreme Court decision, and is not separately set off with its own exhibit number, nor are the pages numbered. The page number used here refers to the number assigned in the Adobe Acrobat copy of the filing.

witness, (a) if granting the request would be "unduly hazardous to institutional safety or correctional goals"; (b) if necessary "to keep the hearing within reasonable limits"; or (c) for reasons of "irrelevance" or "lack of necessity." *Wolff*, 418 U.S. at 566; *see also Ponte*, 471 U.S. at 496-97.

Here, Lieutenant Murray adequately explained why he was not calling plaintiff's witnesses and that explanation met the requirements imposed upon him by *Wolff* and *Ponte*. The evidence before the Court shows that the witnesses would have been asked to testify about matters not relevant to the incident under investigation. Thus, Lieutenant Murray was justified in not calling them and his failure to call those witnesses did not amount to a due process violation.

With regard to the inmate witness who refused to testify, Federal law, unlike state law, does not require that an explanation be given. Although plaintiff disputes it, the inmate witness evidently did not want to become involved in the proceeding. Under Federal law, "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify…[but] may choose to explain their decision at the [disciplinary] hearing, or they may choose to explain it 'later.'" *Ponte*, 471 U.S. at 497. Here, Lieutenant Murray placed on the record at the hearing that the inmate witness refused to testify and presented plaintiff with a form the inmate witness signed, verifying his refusal to participate in the proceeding. Consequently, the Court rejects plaintiff's arguments that Lieutenant Murray violated his due process rights by failing to call certain witnesses, since the witnesses in question were either irrelevant to the issue, or, in the case of the inmate witness, refused to participate.

Plaintiff also claims that Lieutenant Murray violated his due process rights by failing

to provide him with a written statement as to the evidence upon which he relied and the reason for the disciplinary action. Defendants have presented Exhibit C, the hearing transcript, showing that Lieutenant Murray read his written disposition, including the basis for his finding and the reason for the punishment imposed, into the record. In addition, Exhibit A, at 12, is a written statement signed by Lieutenant Murray on February 22, 2001, stating the reason for his finding and sentence. (Murray Decl., Ex. A., at 12.) Lieutenant Murray signed the receipt of the statement for plaintiff since at the time plaintiff was restrained. *Id*. Therefore, plaintiff's contention is without merit.

Finally, plaintiff claims that the hearing officer was biased. The Court's review of the hearing belies that claim. Plaintiff has not established through evidentiary proof that Lieutenant Murray was biased.

### *March 23, 2001 Hearing*

Defendants contend that plaintiff has not established a liberty interest regarding the March 23, 2001 hearing. They contend that the sentence imposed, 30 days in keeplock, was not an atypical and significant hardship, citing Sealey v. Giltner, 197 F.3d 578, 589-90 (2d Cir. 2000) ("Assessing Sealey's 101-day confinement in the Auburn SHU [special housing unit] (for which Giltner bears responsibility) in light of these principles and with his testimony credited, we agree with the Magistrate Judge that he has not shown confinement of a duration and in such conditions as to meet the Sandin standard of atypicality."), and Boddie v. Carpenter, No. 97-2274, 159 F.3d 1345 (2d Cir. Mar. 13, 1998) (published without decision, but decision reported at 1998 U.S. App. LEXIS 20464) ("Boddie's confinement did not impose an atypical and significant hardship. The time he spent in keeplock was minimal and was not accompanied by any egregious circumstances.").

Plaintiff does not establish, though his declaration, that his sentence to 30 days of keeplock was an atypical and significant hardship. His submission does not address the issue, and the Court agrees with defendants' argument that the short duration of the sentence does not justify an automatic determination of atypicality. Accordingly, on this basis alone, plaintiff's claim is subject to dismissal.

Moreover, with regard to the March 23, 2001 hearing, the Court finds that defendants are entitled to dismissal on the merits. While plaintiff contends that he was not informed of the hearing prior to its occurrence, defendants maintain that he in fact waived his right to be present after being fully informed of the hearing date. On this issue, the New York State Supreme Court, Appellate Division, Third Department, ruled that plaintiff voluntarily chose not to attend the hearing:

> The testimony of Curry clearly established petitioner's refusal to attend the hearing (*see, People ex rel. Vega v Smith*, 66 NY2d 130, 140). And, in any event, in his reply, petitioner admits his refusal to attend the hearing, arguing that he had "a State created right through statute to refuse to attend his Tier III hearing". Since petitioner refused to appear, he forfeited his right to challenge the determination on the ground that the hearing should not have been conducted in absentia (*see, Matter of Howard v Kelly*, 115 AD2d 1011, *appeal withdrawn* 67 NY2d 938; *Matter of Morrison v Coughlin*, 101 AD2d 943, *lv denied* 63 NY2d 605; *People ex rel. Morgan v La Vallee*, 49 AD2d 652, *lv denied* 37 NY2d 710; *cf., People v Corley*, 67 NY2d 105, 109-110). Contrary to petitioner's suggestion, the pertinent regulations contain no requirement that the refusal be in writing or otherwise accompanied by any procedural formality. Petitioner's right to attend his hearing depended upon his willingness to accept the proffered opportunity (*cf., Matter of Amato v Ward*, 41 NY2d 469, 472-473).

*Watson v. Coughlin*, 132 A.D.2d 831, 832 (N.Y. App. Div. 1987). Plaintiff does not submit evidentiary proof in admissible form to raise a material issue of fact pertaining to the

Appellate Division's finding[5] based, in part, on plaintiff's admission to the Appellate Division that he refused to attend. With regard to plaintiff's claim that this hearing officer, Lieutenant Donahue, was biased (Compl., at 40), plaintiff asserts only that the hearing was held in his absence as the basis for that claim. (Reynoso Aff. ¶ 6.) Since the Court finds that the evidentiary proof in admissible form does not support the plaintiff's allegation of bias, the Court grants defendants' motion for judgment on that claim.

***Claims Against Defendant Donald Selsky***

Plaintiff claims that defendant Selsky violated his due process rights by modifying, instead of reversing, Lieutenant Murray's decision, and by failing to reverse Lieutenant Donohue's decision. (Compl., at 39.) Since the Court has already determined that the hearing officers did not violate plaintiff's due process rights, it must conclude that defendant Selsky, likewise, did not violate plaintiff's due process rights when he took action on the dispositions. *See Black v. Selsky*, 15 F. Supp. 2d 311, 318 (W.D.N.Y. 1998) ("because Black's claims against Ryan are meritless and Selsky's alleged wrongdoing was based on his affirming Ryan's determination, there is no basis for the claims against Selsky either."). The Court also finds that defendants have established that defendant Selsky's actions, with regard to both hearing decisions, met the applicable constitutional standard, since they were supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985) ("We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."). Because of the Court's resolution of this claim on its merits, the Court does not

---

[5]The New York Appellate Division courts have fact-finding powers. N.Y. C.P.L.R. 5501(c) (McKinney 1986).

reach defendants' alternate argument that defendant Selsky is entitled to qualified immunity.

## CONCLUSION

Defendants motion (# 42) for summary judgment is granted, as is plaintiff's motion (# 50) for an extension of time to respond to defendants' motion. Plaintiff's cross-motion (# 51) for summary judgment is denied.

DATED:   April 27, 2007
             Rochester, New York

                    ENTER:

                                 /s/ Charles J. Siragusa
                                 CHARLES J. SIRAGUSA
                                 United States District Judge